**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASHLEY PETERSON, | : | Civil No. 1:23-CV-00330 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BERKELEY COUNTY SHERIFF'S | : | |
| DEPARTMENT, *et al.*, | : | |
| | : | Judge Jennifer P. Wilson |
| Defendant. | | |

## MEMORANDUM

Before the court is the motion filed by Defendants Berkeley County Sheriff's Department, Berkeley County Council,[1] N. Chronister, Christopher Merson, D. Walker, J. Shockey, H. Heagy, J. Miller, and D. Keller (collectively "Defendants") asking the court to dismiss Plaintiff Ashley Peterson's ("Peterson") complaint for failure to state a claim upon which relief can be granted.  (Doc. 11.) This case involves a motor vehicle crash on Interstate 81 that resulted from a police chase across state lines, and Peterson alleges state law negligence claims against Berkeley County Sheriff's Department, County Council, and the individual Defendants, and also alleges a violation of 42 U.S.C. § 1983 against Berkeley County Sheriff's Department and County Council.  For the reasons that follow, the motion will be granted in part and denied in part.

---

[1] The court approved a stipulation filed by both parties changing amending the name of Defendant "Berkeley County Commission" to "Berkley County Council."  Doc. 16.

## FACTUAL AND PROCEDURAL HISTORY

Peterson is a resident of Massachusetts.  (Doc. 1, ¶ 2.)  Berkeley County Sheriff's Department and County Council are municipal entities located in Berkeley County, West Virginia.  (*Id.* ¶¶ 3, 4.)  The individually-named Defendants are all employees of Berkeley County Sheriff's Department.  (*Id.* ¶¶ 5–12.)

On November 5, 2021, the individually-named Defendants, who are police officers from Berkeley County Sheriff's Department, began pursuing an individual named Terrell Thorne ("Thorne") in West Virginia at around 5:50 p.m.  (*Id.* ¶ 19.) The chase began on rural roads, but then continued onto Interstate 81 ("I-81") and crossed both Maryland and Pennsylvania state lines.  (*Id.*)  Peterson alleges that the vehicle pursuit lasted for an excessive amount of time, swerved through "no passing zones and on-crowded highways," occurred "after daylight hours," and exceeded speed limits, reaching up to 130 MPH.  (*Id.* ¶ 23.)  Peterson was a passenger in a car travelling northbound on I-81 in Franklin County, Pennsylvania. (*Id.* ¶ 16.)  At approximately 6:11 p.m., Thorne's car struck the car Peterson was riding in, causing it to leave the road and overturn.  (*Id.* ¶ 17.)  As a result of this crash, Peterson sustained severe injuries.  (*Id.* ¶ 30.)

Peterson alleges that the individual officers were reckless in their pursuit of Thorne.  (*Id.* ¶ 34.)  Peterson further alleges that Defendant Berkeley County Sheriff's Department failed to have adequate policies regarding vehicle pursuits,

failed to properly train its officers regarding pursuits, and failed supervise its officers regarding pursuits.  (*Id.* ¶ 26.)

Peterson filed her complaint on February 24, 2023.  (Doc. 1.)  In the complaint, Peterson alleges one count of negligence against the Berkeley County Sheriff's Department and Berkeley County Council (Count I), one count of negligence against the individual officers (Count II), and one count of violation of 42 U.S.C. § 1983 against the Berkeley County Sherriff's Department and Berkeley County Council (Count III).  Defendants filed their motion to dismiss for failure to state a claim on March 29, 2023.  (Doc. 11.)  This motion is fully briefed and ripe for disposition.

## JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse, and the matter in controversy exceeds $75,000.  Jurisdiction is also proper under 28 U.S.C. § 1331 because Peterson also brings claims under 42 U.S.C. § 1983.  Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391 because a substantial part of the events or omissions occurred within the District.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to

relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

Defendants first argue that Berkeley County Sherriff's Department is not

distinct from the Berkeley County Council, and, therefore, cannot be sued.  (Doc.

14, p. 5.)[2]  Peterson concedes this point and agrees to dismiss the claims against

Berkeley County Sherriff's Department.  (Doc. 17, p. 5.)  Additionally, the court

agrees that under West Virginia law, the Berkeley County Sherriff's Department is

not a legal entity that is capable of being sued.  W.Va. Code § 7-1-1(a).

---

[2] For ease of reference, the court utilizes the page numbers contained in the CM/ECF header.

Accordingly, Defendants' motion to dismiss on this point is granted. Berkeley County Sheriff's Department will be dismissed from this action with prejudice.

Defendants next argue that Berkeley County Council and its employees are immune from liability pursuant to West Virginia's Governmental Tort Claims and Insurance Reform Act ("WVGTCIRA"). (*Id.* at 8–10.) Defendants also argue that Peterson has failed to state a claim for a violation of § 1983 because she has failed to allege a constitutional violation and failed to point to a policy which caused a constitutional violation. (*Id.* at 10–14.) Finally, Defendants argue that Peterson has improperly pleaded a specific amount of monetary damages contrary to W. VA. CODE § 29-12A-6(d). (*Id.* at 14.)

Peterson responds that both Berkeley County Council and the individually-named defendants are not immune from liability for injuries caused by their negligent acts during a vehicular pursuit, pointing to *Sergent v. City of Charleston*, 549 S.E. 2d 311 (W. Va. 2001) and *Peak v. Ratliff*, 408 S.E. 2d 300 (W. Va. 1991). (Doc. 17, p. 6.) Peterson also argues that she has alleged sufficient facts to support her negligence claims against both Berkeley County Council and individual defendants under both West Virginia and Pennsylvania law. (*Id.* at 7–12.) Peterson argues she is not required to point to a specific policy to state a claim under § 1983. (*Id.* at 13.) Finally, Peterson argues that she requested a specific

amount of monetary damages in order to establish jurisdiction.  (*Id.* at 15.)  The court will address each argument in turn.

### A. Immunity of Berkeley County Council

West Virginia Code § 29-12A-4 details a political subdivision's liability in West Virginia, starting with the principle that political subdivisions are immune from "damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or of an employee . . . in connection with a governmental property function . . . ."  §29-12A-4(b)(1).  This provision is subject to exceptions listed in subsection (c), which provides:

> Subject to sections five and six of this article, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> (1) Except as otherwise provided in this article, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any vehicle by their employees when the employees are engaged within the scope of their employment and authority.
>
> (2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.

§ 29-12A-4(c)(1), (2).   As such, political subdivisions in West Virginia are generally *not* liable for damages in a civil action, except that a political subdivision

*will be* liable for damages when the injuries, damages, or loss arise from an employee's negligent performance of their duties within the scope of their employment, including negligent operation of a vehicle.

However, the exception allowing political subdivisions to be liable for negligent acts is further subject to sections five and six of the act.  Relevant here, § 29-12A-5(a)(5) provides "[a] political subdivision is immune from liability if a loss or claim results from: (5) civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection."  W. VA. CODE § 29-12A-5(a)(5).  Accordingly, the subsection allowing liability for an employee's negligent acts performed while in the scope of their employment, does not apply when the loss or claim results from the method of providing police or law enforcement protection.

Defendants argue that "[a] high-speed pursuit of a criminal suspect across state lines is indisputably a method of providing police and law enforcement[,]" and every alleged breach of duty is a failure in the method of providing police and law enforcement protection.  (Doc. 14, p. 9.)  Peterson counters that, in the context of police pursuits, West Virginia law, as established by *Sergent* and *Peak*, does not provide for "blanket immunity" for police officers engaged in vehicle pursuits which result in injury to a third party.

In *Sergent*, the Supreme Court of Appeals of West Virginia held that the individual officers involved in a police chase resulting in the death of a bystander bicyclist were not negligent in their pursuit of a criminal suspect, and therefore, the individual officers and their employer, the political subdivision, were not liable. *Sergent*, 549 S.E. 2d at 317. The Supreme Court of Appeals applied the standard established in *Peak* in reaching their determination. *Id.* at 318. *Peak* dealt with a vehicular pursuit by police officers and applied the West Virginia statute that governs the immunities and privileges of police officers while operating emergency vehicles. *Peak*, 408 S.E. 2d at 300 (citing W. VA. CODE § 17C-2-5 (1971)). Specifically, the *Peak* court held that "the pursuing officer is not liable for injuries to the third party arising out of the collision unless the officer's conduct in the pursuit amounted to reckless conduct or gross negligence and was a substantial factor in bringing about the collision." *Id.*

As Defendants point out, these cases govern the individual liability of the specific officers, as provided in W. VA. CODE §29-12A-5(b). Accordingly, Peterson's reliance on *Sergent* and *Peak* to hold Berkeley County Council liable is misplaced. The relevant inquiry for Berkekey County Council's liability is whether the immunity provided in § 29-12A-5(a)(5) applies to the instant case.

The scope of this specific provision has been the subject of some debate within West Virginia; however, it appears that the West Virginia Supreme Court of

Appeals' holding in *Albert v. City of Wheeling*, 792 S.E. 2d 628 (W. Va. 2016) is

the final word.  In *Albert*, the Supreme Court of Appeals overruled one of its prior

decisions, *Smith v. Burdette*, 566 S.E. 2d 614 (W. Va. 2002), and held:

> Because any potential liability set forth in [§29-12A-4(c)(2)] is made
> expressly subject to the grant of immunity provided in section 5(a)(5),
> there is no right to seek recovery from a political subdivision for the
> negligent performance of its employee's actions performed within the
> scope of his or her employment and authority when those actions
> pertain to either the failure to provide fire [or police] protection or the
> method of providing fire [or police] protection

*Albert*, 792 S.E. 2d at 631.  The Supreme Court of Appeals further explained that

the interpretation of "method" provided in *Smith*[3] was overruled, concluding that:

> statutory immunity exists for a political subdivision under the
> provisions of West Virginia Code § 29-12A-5(a)(5) if a loss or claim
> results from the failure to provide fire protection or the method of
> providing fire protection regardless of whether such loss or claim,
> asserted under West Virginia Code § 29-12A-4(c)(2), is caused by the
> negligent performance of acts by the political subdivision's employees
> while acting within the scope of employment.

*Id.* at 632.  Federal courts within West Virginia have interpreted the provision

consistently with *Albert*.  *See Fields v. King*, 576 F. Supp. 3d 392, 402–403

(S.D.W. Va. 2021) (holding that *Albert* overruled *Smith* in its entirety and

expressly rejecting plaintiff's argument that "method" referred to the decision-

making process).  Peterson does not argue that the police chase at issue is not a

---

[3] *Smith* held that "'the method of providing police, law enforcement or fire protection' contained in [W. VA. CODE § 29-12A-5(a)(5)] refers to the decision-making or the planning process in developing a governmental policy, including how that policy is to be performed."  566 S.E. 2d at 618.

"method of providing police or law enforcement protection" such that the exception contained in §29-12A-5 does not apply.  Pursuing a fleeing criminal suspect is plainly a method of providing police or law enforcement protection.  Accordingly, Berkeley County Council is immune from liability for the negligent acts of its employees which resulted from this method of providing police or law enforcement.  As Berkeley County Council is immune from liability and amendment would be futile, the court will grant Berkely County Council's motion and dismiss Count I with prejudice.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. Immunity of the Individual Officers

Before addressing whether the individual officers are immune from liability, the court must address Peterson's choice of law argument.  Peterson argues that, under Pennsylvania's choice of law rules, Pennsylvania law should govern the individual officers' immunity because Pennsylvania is the location of the accident, and Defendants subjected themselves to the laws of Pennsylvania by entering the Commonwealth.  (Doc. 17, pp. 11–12.)  Defendants argue there is a false conflict because only West Virginia's interest is impacted by applying the other state's law and, therefore, West Virginia's law must apply.  (Doc. 18, p. 7.)

The court will apply Pennsylvania choice of law rules because Pennsylvania is the forum state.  *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007).  In Pennsylvania, the first step in a choice of law analysis is determining

whether there is an "actual or real conflict between the potentially applicable laws." *Id.* at 230. If there is an actual conflict, then the court must determine whether the differences create a "true," "false," or an "unprovided for" conflict. *Id.*

Here, there is an actual conflict between the laws of West Virginia and Pennsylvania regarding when a police officer can be personally liable for injuries incurred by an innocent bystander as a result of a negligent police chase. In West Virginia, the employee of a political subdivision is generally immune from liability, unless the injury results from acts done "with malicious purpose, in bad faith, or in a wanton or reckless manner. . . ." W.VA. CODE § 29-12A-5(b)(2). In the context of injury to a third party caused by a vehicle pursued by the police, "the pursuing officer is not liable for injuries to the third party arising out of the collision unless the officer's conduct in the pursuit amounted to reckless conduct or gross negligence and was a substantial factor in bringing about the collision." *Peak*, 408 S.E. 2d at 307–08.

In Pennsylvania, by contrast, "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency." 42 PA. CON. STAT. § 8545. Thus, under the immunity statute for local agencies, an employee will be liable if:

(1) The damages would be recoverable under common law or a statute creating a cause of action . . .; and (2) The injury was caused by the negligent acts of the . . . employee . . . acting within the scope of his office or duties. . . [and an exception from subsection (b) applies.]

42 PA. CON. STAT. § 8542(a).  Subsection (b) provides "[t]he following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: (1) Vehicle liability. – The operation of any motor vehicle in the possession or control of the local agency . . .[.]"[4]  Accordingly, when an innocent third party bystander is injured by a vehicle pursued by the police, the individual officer must "operate their vehicle with 'due regard for the safety of all persons[]' . . . ." *Kuzmics v. Santiago*, 389 A.2d 587, 590 (Pa. Super. 1978) (quoting 75 PA. CON. STAT. § 3105)).  This standard of care results in liability if the officer was negligent under emergency circumstances.  *Johnson v. City of Phila.*, 808 A.2d 978, 982 (Pa. Commw. Ct. 2002).[5]

Further, Pennsylvania courts have explained that "[t]he difference between reckless misconduct and conduct involving only such a quantum of risk as is

---

[4] The omitted portions of the statute provide the local agency is not liable to the plaintiff if the plaintiff was the driver or passenger of the vehicle being pursued.  *See Cornelius v. Roberts*, 71 A.3d 345, 351 (Pa. Commw. Ct. 2013).  As Peterson was not a passenger in the car being pursued, this portion of the statute is not relevant and is omitted for brevity.

[5] Interestingly, *Peak* cites factors that *Kuzmics* used to determine whether an officer acted negligently as the factors to be used to determine whether an officer acted recklessly.  These factors are: "the length, characteristics, and speed of the pursuit; the area of the pursuit, whether rural or urban; the highway characteristics such as curves or no passing zones; the presence of pedestrians; weather and visibility; and the seriousness of the law violation."  *Peak*, 408 S.E. 2d at 308.

necessary to make it negligent is a difference in the degree of the risk, but this difference is so marked as to amount substantially to a difference in kind." *Id.* at 983 (citing RESTATEMENT (SECOND) OF TORTS § 500 cmt. g.) Accordingly, because reckless misconduct and negligence are "different in kind," there is an actual difference between the laws of West Virginia and Pennsylvania governing liability of an individual police officer for damages of a third party resulting from vehicle pursuit. Therefore, the court must now determine whether this is a "true," "false," or "unprovided for" conflict.

A true conflict exists "when the governmental interests of both jurisdictions would be impaired if their law were not applied. *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005) (quoting *Lacey v. Cessna Aircraft Co.*, 923 F.2d 170, 187 n.15 (3d Cir. 2015)). In this situation, the court must apply the "law of the state having the most significant contacts or relationship with the particular issue." *Id.* (quoting *In re Estate of Agostini*, 457 A.2d 861, 871 (Pa. Super. 1983)).

"A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law. In such a situation, the court must apply the law of the state whose interests would be harmed if its law were not applied." *Lacey*, 923 F.2d at 187. Additionally, "[u]nder Pennsylvania choice of law analysis, a false conflict exists 'where [an] accident is fortuitous and the state where the accident occurred has no interest in

the regulatory standard at issue.'"  *LeJuene v. Bliss-Salem, Inc.*, 85 F.3d 1069,

1071 (3d Cir. 1996).

An "unprovided-for" conflict exists where "neither jurisdiction's interests

would be impaired if its laws are not applied.  The principle of *lex loci delicti*, the

law of the place of the wrong, supplies the substantive law to be applied in

unprovided-for cases."  *Garcia*, 421 F.3d at 220.

Here, as Defendants argue, there is a false conflict between the West

Virginia and Pennsylvania political subdivision immunity laws because both states

favor political subdivision immunity, and West Virginia's interest will be impaired

by the application of Pennsylvania law.  In West Virginia, the WVGTCIRA

specifically states West Virginia's policy regarding political subdivision immunity,

providing "[the WVGTCIRA's] purposes are to limit liability of political

subdivisions and provide immunity to political subdivisions in certain instances

and to regulate the costs and coverages of insurance available to political

subdivisions for such liability."  W. VA. CODE § 29-12A-1.  In Pennsylvania, the

courts have recognized that, in enacting Pennsylvania's political subdivision

immunity act, it was "the General Assembly's clear intent to insulate local

agencies and agency employees from tort claims. . . [.]"  *Cornelius*, 71 A.3d at

350.  *See also Mascaro v. Youth Study Ctr.*, 523 A.2d 1118, 1123 (Pa. 1987)

(collecting cases).  Therefore, both states favor immunizing political subdivisions from tort claims, but they do so by applying differing standards of care.

As such, applying West Virginia's recklessness standard would not frustrate Pennsylvania's interest in immunizing its own political subdivisions because there is no Pennsylvania political subdivision involved in this case.  Further, looking to Pennsylvania's general interest in regulating tort litigation within the state, applying a standard of care which is more exacting is still in line with Pennsylvania's own determinations of limiting the liability of political subdivisions.  Applying a recklessness standard instead of a "plain negligence" standard still achieves Pennsylvania's goal of limiting political subdivision liability.

However, applying Pennsylvania's negligence standard would frustrate West Virginias's interests by making it easier to hold political subdivisions and employees liable.  This would be contrary to West Virginia's stated policy of immunizing political subdivisions and employees.  Additionally, West Virginia has the additional purpose of regulating the costs of insurance coverage available to political subdivisions.  § 29-12A-1.  Subjecting political subdivisions and employees to a different standard of care when they enter a different state would frustrate West Virginia's interest in regulating the insurance market by making liability more uncertain.

Moreover, Pennsylvania has less of an interest in this specific litigation because Peterson is not a citizen of Pennsylvania.  States generally have an interest in providing redress for injuries to their own citizens.  However, because Peterson is not a citizen of Pennsylvania, this interest is not implicated in this case.  Finally, although no party makes this argument, it could be argued that Pennsylvania has an interest in maintaining safe roads for both citizens and visitors travelling through the commonwealth, such as Peterson.  However, as explained above, the statute governing standards of care for drivers of emergency vehicles[6] is part and parcel of Pennsylvania's policy governing immunity of political subdivisions and their employees.  Pennsylvania has decided on a lower standard of care for police officers compared to regular users of the roadway.  Accordingly, applying West Virginia's law, which also employs a lower standard for officers engaged in an emergency pursuit, will not frustrate Pennsylvania's purposes of maintaining safe roadways.

Because there is a false conflict between the Pennsylvania and West Virginia laws, the court will apply the law of the state whose interests will be most impaired.  Here, the court will apply West Virginia law in order to determine whether Peterson has stated a claim of negligence against the individual Defendants.

---

[6] 75 PA. CON. STAT. § 3105.

West Virginia Code § 29-12A-4(b) provides for an employee's individual liability, providing:

> An employee of a political subdivision is immune from liability unless one of the following applies:
>
> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
>
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
>
> (3) liability is expressly imposed upon the employee by a provision of this code.

§ 29-12A-4(b)(1)–(3).  As discussed above, West Virginia has further held that, in the context of injury to a third party caused by a vehicle pursued by the police colliding with the bystander's vehicle, "the pursuing officer is not liable for injuries to the third party arising out of the collision unless the officer's conduct in the pursuit amounted to reckless conduct or gross negligence and was a substantial factor in bringing about the collision."  *Peak*, 408 S.E. 2d at 307–08.  In making this determination, the court should consider factors "such as the length, characteristics, and speed of the pursuit; the area of the pursuit, whether rural or urban; the highway characteristics such as curves or no passing zones; the presence of pedestrians and traffic; weather and visibility; and the seriousness of the law violation."  *Id.* at 308.

Defendants argue that a high-speed pursuit of a criminal suspect is within the scope of the officer's employment, and that the police officers' actions were not with malicious purpose, in bad faith, or in a wanton or reckless manner because the criminal suspect struck Peterson's vehicle. (Doc. 14, p. 10.) Defendants further argue that the allegations regarding Defendants' reckless actions are merely conclusory allegations. (*Id.*). Peterson argues, on the other hand, that she has adequately pleaded a negligence claim against the individual officers under either Pennsylvania or West Virginia law. (Doc. 17, pp. 6–12.)

Peterson has specifically alleged the length, characteristics, and speed of the pursuit, the area of pursuit, the highway characteristics, and the visibility of the pursuit. (Doc. 1, ¶¶ 1–20.) Specifically, Peterson alleges that Defendants were reckless in pursuit of Thorne because they pursued him for over twenty minutes, over a distance of thirty-four miles, swerving through no-passing zones and on crowded highways at night, and at times exceeded 130 miles per hour. (*Id.* ¶¶ 20, 23.) Peterson also states conclusory allegations that the pursuit was not necessary and was not done with "due regard for the safety of all persons." (*Id.* ¶¶ 21, 24.) Defendants argue that because Peterson has failed to allege the seriousness of Thorne's violation (i.e. the purpose of the pursuit), the complaint must be dismissed. (Doc. 18, p. 3.) While it is true that Peterson has not alleged the reason that Thorne was being pursued, she has alleged sufficient facts regarding the

pursuit for this claim to survive Defendants' challenge.  The failure to allege one of the six factors when she has adequately alleged four is not fatal to stating a claim at this stage.  Further, Peterson has alleged that Thorne struck her car as a result of Defendants' pursuit.  (Doc. 1, ¶ 27.)  While Peterson's allegations do include various conclusory statements, she has provided sufficient factual information to state a claim.  Accordingly, Defendants' motion to dismiss Count II will be denied.

### C. *Monell* liability of Berkeley County Council

A municipality can be liable for constitutional violations committed by its employees only when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  Accordingly, a plaintiff must "plead that the complained-of injury was caused directly by a local government's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  *Schlaybach v. Berks Heim Nursing & Rehab*, 434 F. Supp. 3d. 342, 350–51 (E.D. Pa. 2020) (quoting *Harris v. City of Phila.*, 171 F. Supp. 3d 395, 400 (E.D. Pa. 2016)).  "The municipal policy or custom must be the 'moving force' behind the constitutional violation such that there is a direct link between the municipal policy or custom and the deprivation of constitutional rights."  *Jewell v. Ridley Twp.*, No. CIV.A. 09-4947, 2011 WL

5524260, at *6 (E.D. Pa. Nov. 10, 2011), *aff'd*, 497 F. App'x 182 (3d Cir. 2012)

(citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404

(1997)).

Peterson argues that "[i]n the context of **injuries caused by a police**

**pursuit**, municipal liability may be based on a **deficient policy or custom and/or**

**a failure to properly train officers** with respect to police pursuits." (Doc. 17, p.

12.) (emphasis in original).  Peterson then relies on *Fagan v. City of Vineland*, 22

F.3d 1283, 1292 (3d Cir. 1994), to argue that a municipality can be held liable for

injuries arising from a police chase.  (*Id.* at 13–14.)  Defendants argue that

Peterson alleges no underlying constitutional violation and also argue that Peterson

fails to allege a specific policy.  (Doc. 14, pp. 11, 14.)

The court agrees with Defendants that Peterson does not allege a

constitutional violation.  Peterson alleges that she was physically injured due to the

Berkely County Sheriff's Department's negligence and the Department's failure to

have a policy governing vehicle pursuits.  These are not allegations of a

constitutional injury.  Additionally, Peterson's reliance on *Fagan* is misplaced.

The court in Fagan held:

> If it can be shown that the plaintiff suffered that injury, **which amounts**
> **to deprivation of life or liberty**, because the officer was following a
> city policy reflecting the city policymakers' deliberate indifference to
> constitutional rights, then the City is directly liable under section 1983
> for causing a violation of the plaintiff's Fourteenth Amendment rights.

> The pursuing police officer is merely the causal conduit for the constitutional violation committed by the City.

*Fagan*, 22 F.3d at 1292 (emphasis added). Thus, in *Fagan*, the plaintiff alleged that their Fourteenth Amendment substantive due process rights were violated by the city "following a policy of not properly training its police officers on how to conduct high-speed pursuits in compliance with the guidelines." 22 F.3d 1283, 1291 (3d Cir. 1994). The Third Circuit went on to hold that, when an individual officer and a municipality are sued for constitutional violations, the municipality may still be held liable for the constitutional violations, even if the individual officer is not held liable. *Id.* at 1292.

Here, there is no allegation of a constitutional violation. The only allegation regarding the constitution at all is Plaintiff's allegation that "Defendants were grossly negligent, deliberately indifferent, and reckless with regard to the potential violations of the constitutional rights of individuals such as Ashley Peterson." Doc. 1, ¶ 50. This type of conclusory assertion does not state a claim for relief under § 1983. Moreover, in her brief in opposition, Plaintiff argues that her personal injuries are a violation of her Fourteenth Amendment rights. (Doc. 17, p. 14.) This conclusory statement, not contained in her complaint, is also insufficient to meet the pleading standards established by 12(b)(6).[7]  *See also West v. Atkins*,

---

[7] For example, stating a claim for violation of one's Fourteenth Amendment Due Process Clause right to be from dangers that the government itself creates requires four elements: "(1) [t]he harm

487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011) ("[I]f there is no constitutional right, it does not matter what facts have been provided as there can be no § 1983 claim."); *Reichley v. Pa. Dep't of Agric.*, 427 F.3d 236, 244 (3d Cir. 2005) ("Accordingly, there can be no cause of action under § 1983 absent violation of a right secured by the Constitution or the laws of the United States.").

Therefore, because Peterson has failed to state a constitutional violation, she fails to state a claim of *Monell* liability against Berkeley County Council. Defendants' motion to dismiss Count III will be granted and Count III will be dismissed without prejudice.[8]

---

ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's action, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Sauers v. Borough of Nesquehonig*, 905 F.3d 711, 717 (3d Cir. 2018) (quoting *Haberle v. Troxel*, 885 F.3d 170, 176 (3d Cir. 2018) (involving injuries to third parties resulting from police pursuit of a vehicle)).

[8] Peterson will be granted to leave to amend Count III because there was no undue delay, bad faith, or dilatory motive on her part. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Additionally, amendment would not be futile or prejudice Defendants. *Id.  See also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (requiring courts offer leave to amend in civil rights cases "unless doing so would be inequitable or futile.").

Finally, Defendants argue that Peterson's complaint must be dismissed because she pleaded a specific amount of damages, in violation of W. VA. CODE § 29-12A-6 and Local Rule 8.1.  (Doc. 14, p. 18.)  Peterson argues she pleaded damages "in excess of $150,000" in order to establish diversity jurisdiction.  (Doc. 17, p.15.)

W. Va. Code § 29-12A-6(d) provides:

> In the complaint filed in a civil action against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by an act or omission of such political subdivision or employee, whether filed in an original action, cross-claim, counterclaim, third-party claim, or claim for subrogation, the complainant shall include a demand for a judgment for the damages that the judge in a nonjury trial or the jury in a jury trial finds that the complainant is entitled to be awarded, but shall not specify in the demand any monetary amount for damages sought.

Middle District of Pennsylvania Local Rule 8.1 provides

> The demand for judgment required in any pleading in any civil action pursuant to FED. R. CIV. P. 8(a)93) may set forth generally that the party claiming damages is entitled to monetary relief but shall not claim any specific sum where unliquidated damages are involved.  The short plain statement of jurisdiction, required by FED. R. CIV. P. 8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other.

While Defendants ask the court to dismiss Peterson's complaint because she pleaded a specific sum of damages in the *ad damnum* clause contrary to Local Rule 8.1 and West Virginia statute, this request is more accurately construed as a motion to strike the *ad damnum* clause.  Erroneously pleading a specific amount of

damages is not a reason to dismiss the complaint, especially when Peterson has stated that she pleaded this amount to establish diversity jurisdiction.  Accordingly, the court will strike the specific request for damages "in excess of $150,000" in the *ad damnum* clause and allow Peterson to include the jurisdictional amount in a jurisdictional statement should she choose to file a second amended complaint.

### CONCLUSION

Defendants' motion to dismiss will be granted regarding Count I and III.  Count I will be dismissed with prejudice and Count III will be dismissed without prejudice.  Defendants' motion to dismiss will be denied as to Count II.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Dated: December 27, 2023          Middle District of Pennsylvania