# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHLEY PETERSON, | : | Civil No. 1:23-CV-00330 |
| Plaintiff, | : | |
| v. | : | |
| BERKELEY COUNTY COMMISSION, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is the motion to dismiss filed by Defendants Berkeley County Commission ("Commission"),[1] N. Chronister, Christopher Merson, D. Walker, J. Shockey, H. Heagy, J. Miller, and D. Keller (collectively "Defendants") asking the court to dismiss Plaintiff Ashley Peterson's ("Peterson") complaint for failure to state a claim upon which relief can be granted. (Doc. 28.) This case involves a motor vehicle crash on Interstate 81 that resulted from a police chase that crossed several state lines. Peterson alleges state law negligence claims against the individual Defendants and a violation of 42 U.S.C. § 1983 against the Commission. For the reasons that follow, the motion will be denied.

---

[1] As noted by Defendants, on July 1, 2023, Berkeley County Council changed its name to Berkeley County Commission. (Doc. 28, p. 2 n.1.) Accordingly, the court will refer to Berkeley County Commission.

1

**FACTUAL AND PROCEDURAL HISTORY**

Peterson is a resident of Massachusetts. (Doc. 24, ¶ 2.) Berkeley County Commission is a municipal entity located in Berkeley County, West Virginia. (*Id.* ¶¶ 3, 4.) The individually-named Defendants are all police officers and employees of the Berkeley County Sheriff's Department, which is overseen by the Commission.[2] (*Id.* ¶¶ 5–12.)

On November 5, 2021, the individually-named Defendants began pursuing an individual named Terrell Thorne ("Thorne") in West Virginia at around 5:50 p.m. (*Id.* ¶ 20.) The chase began on rural roads, but then continued onto Interstate 81 ("I-81") and crossed both Maryland and Pennsylvania state lines. (*Id.*) Peterson alleges that the vehicle pursuit lasted for an excessive amount of time, swerved through "no passing zones and on-crowded highways," occurred "after daylight hours," and exceeded speed limits, reaching up to 130 MPH. (*Id.* ¶ 24.) Peterson was a passenger in a car travelling northbound on I-81 in Franklin County, Pennsylvania. (*Id.* ¶ 17.) At approximately 6:11 p.m., Thorne's car struck the car Peterson was riding in, causing it to leave the road and overturn. (*Id.* ¶ 18.) As a result of this crash, Peterson sustained severe injuries. (*Id.* ¶ 31.)

---

[2] Berkeley County Sheriff's Department was initially a Defendant in this case but was dismissed with prejudice after the first round of motions to dismiss. (Doc. 23.)

Peterson alleges that the individual officers were careless, reckless, negligent, and grossly negligent in their pursuit of Thorne.  (*Id.* ¶¶ 34–40.) Peterson further alleges that Defendant Berkeley County failed to establish adequate policies regarding vehicle pursuits, failed to properly train its officers regarding pursuits, and failed supervise its officers regarding pursuits.  (*Id.* ¶¶ 26, 41–51.)  Peterson alleges that these failures were the moving force behind the actions of the individual Defendants, which led to violations of her substantive due process rights under the Fourteenth Amendment.  (*Id.* ¶ 46.)

Peterson filed her complaint on February 24, 2023.  (Doc. 1.)  Defendants filed a motion to dismiss for failure to state a claim on March 29, 2023.  (Doc. 11.) This motion was granted in part and denied in part on December 27, 2023.  (Doc. 22.)  Relevant to the instant motion, the court held that Peterson failed to allege a constitutional injury sufficient to a state a claim under 42 U.S.C. § 1983.  (*Id.* at 19–22.)[3]  Berkeley County Sheriff's Department was dismissed as a result of the resolution of the first motion to dismiss.  (Doc. 23.)

Peterson filed an amended complaint on January 12, 2024.  (Doc. 24.)  The amended complaint brings one count of negligence against the individual Defendants and one count of violating the Fourteenth Amendment under 42 U.S.C.

---

[3] For ease of reference, the court utilizes the page numbers contained in the CM/ECF header.

3

§ 1983 against Berkeley County Commission.[4] (*Id.* at ¶¶ 34–51.) Defendants filed a motion to dismiss on January 26, 2024. (Doc. 27.) This second motion to dismiss is fully briefed and ripe for disposition.

## JURISDICTION AND VENUE

This court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are completely diverse, and the matter in controversy exceeds $75,000. Jurisdiction is also proper pursuant to 28 U.S.C. § 1331 because Peterson also brings a claim under 42 U.S.C. § 1983. Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391 because a substantial part of the events or omissions occurred within the District.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting

---

[4] The court notes that the second count also lists the Berkeley County Sheriff's Department. However, as explained above, Berkeley County Sheriff's Department was dismissed with prejudice. Accordingly, this count is, in reality, brought only against the Berkeley County Commission. The court also notes that the counts are numbered as "count II" and "count III." In order to avoid confusion, the court will refer to the count against the individual Defendants as the "negligence count" and the count against the municipal entities as the "*Monell* count."

*Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

Defendants argue that Peterson has again failed to allege a constitutional injury because she has failed to plead any facts, and her allegations of injury are vague and conclusory. (Doc. 28, pp. 5, 6.) Further, Defendants argue that Peterson has failed to identify any details connecting the Commission's alleged failures with her injuries, and she has not specified any supervisory practice or knowledge of prior incidents sufficient to show the Commission acted with deliberate indifference. (Doc. 34, pp. 3, 4.)

Peterson responds that she is not required to point to a specific policy to plead a *Monell* claim and relies again on *Fagan v. City of Vineland*, 22 F.3d 1283

(3d Cir. 1994)[5] to argue that the municipality can be liable for injuries resulting from a high-speed car chase without an underlying constitutional violation. (Doc. 31, p. 11.) She argues she has sufficiently alleged a claim under 42 U.S.C. § 1983 because she identified her injury as a "violation of her substantive due process rights," alleged that her injuries were caused by Defendants' inadequate policies and training regarding police pursuits, and alleged that Defendant Berkeley County acted with deliberate indifference and reckless disregard in failing to have adequate policies and training. (*Id.* at 12.) Peterson also relies on the details of the crash to support her claimed injuries. (*Id.*)

A municipality can be liable for constitutional violations committed by its employees only when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Accordingly, a plaintiff must "plead that the complained-of injury was caused directly by a local government's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Schlaybach v. Berks Heim*

---

[5] *Fagan* has a limited reach, and applies when "it can be shown that the plaintiff suffered [an] injury, which amounts to deprivation of life or liberty, because [an individual official] was following a city policy reflecting the city policymakers' deliberate indifference to constitutional rights[.]" 22 F.3d at 1292. The *Fagan* court held that, in this situation "the City is directly liable under § 1983 for causing a violation of the plaintiff's Fourteenth Amendment rights." *Id.*

*Nursing & Rehab*, 434 F. Supp. 3d. 342, 350–51 (E.D. Pa. 2020) (quoting *Harris v. City of Phila.*, 171 F. Supp. 3d 395, 400 (E.D. Pa. 2016)).

Here, the alleged injury is a violation of Peterson's substantive due process right to life and liberty under the Fourteenth Amendment due to the injuries she suffered from the accident. (Doc. 24, ¶ 46.) "The critical factor in determining whether Fourteenth Amendment liability for a high-speed chase may be imposed is whether the officer's conduct can be found to shock the conscience, for which the evidence must show intent to harm the suspect physically." *Davis v. Twp. of Hillside*, 190 F.3d 167, 170 (3d Cir. 1999) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 933 (1998)). "[N]egligence is not enough to shock the conscience under any circumstances." *Schieber v. City of Phila.*, 320 F.3d 409, 419 (3d Cir. 2003). Further, "more culpability is required to shock the conscience [when] state actors are required to act promptly and under pressure [, and] the same is true [when] the responsibilities of the state actors require a judgment between competing, legitimate interests." *Id.*

Peterson has sufficiently alleged an injury because she has alleged that the pursuit was not necessary, "[t]he dangers of the pursuit outweighed the need to apprehend [the suspect,]" and that the "Defendants' disregard for the risk they created is shocking to the contemporary conscience." (Doc. 24, ¶¶ 22, 23, 45.)

Although these allegations are sparse, they are sufficient to satisfy Peterson's burden and allow discovery to go forward.

Defendants next argue that Peterson has failed to sufficiently allege a policy or custom in order to hold the Commission liable.  (Doc. 28, p. 6.)  A plaintiff can proceed with a § 1983 claim against a municipality in two ways.  First, she can allege that a policy or custom caused her injury.  Second, she can allege that a failure by the municipality that reflects a "deliberate or conscious choice" caused her injury.  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  The Third Circuit has explained that a plaintiff proceeding under a failure or inadequacy theory, such as Peterson,[6] must demonstrate "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Id.* at 106.  This requires showing "whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional right." *Id.* (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).  A plaintiff proceeding on a "failure or inadequacy theory" need not point to a specific policy because "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible,

---

[6] Peterson alleges that "Defendants failed to have an adequate policy in place governing police pursuits, failed to properly train officers in the conduct of such pursuits, and failed to supervise officers during such pursuits." (Doc. 24, ¶¶ 27, 42.)

and for which the city may be held liability if it actually causes injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

Most commonly, an inadequacy in training or policy amounts to deliberate indifference when there is a pattern of similar violations. *Connick v. Thompson*, 563 U.S. 61, 62 (2011). However, deliberate indifference can be shown from a single incident when, considering the "duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been indifferent to the need." *City of Canton*, 489 U.S. at 390. For example, as explained by the Supreme Court in *City of Canton*, municipal policymakers

> know to a moral certainty that their police officers will be required to arrest fleeing felons. [It] has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.

*Id.* at 390 fn.10.

Finally, a plaintiff must show causation as well, demonstrating "a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Ctny., Okl. v. Brown*, 520 U.S. 397, 404 (1997). A direct causal link is established when a plaintiff shows that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.*

In looking at causation, the focus "must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390. "Liability cannot rest only on a showing that the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury.'" *Thomas v. Cumberland Cnty.*, 749 F.3d. 217, 226 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Twp.,* 946 F.2d 1017, 1029–30 (3d Cir. 1991)).

Here, again, although the allegations are sparse, Peterson has sufficiently alleged a policy of failing to train police officers in how to properly undertake pursuits, and that this failure was a moving force behind her injury. Similar to the example from *City of Canton*, municipalities know to a moral certainty that their officers will face situations where they will have to pursue a fleeing suspect in a vehicle. These pursuits create risks of constitutional injury and failing to have adequate policies in place may rise to the level of deliberate indifference. Peterson alleges that the Commission has inadequate policies regarding pursuits and that the Commission has a history of ignoring or not enforcing policies regarding pursuits. (Doc. 24, ¶¶ 42, 43.) Without the benefit of discovery, these allegations are sufficient to state a claim upon which relief can be granted. Accordingly, the motion to dismiss will be denied.

## CONCLUSION

Defendants' motion to dismiss will be denied. An appropriate Order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: April 1, 2024